UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MASTON LYONS and LINDA LYONS, | : | |
| | : | |
| *Plaintiffs*, | : | |
| v. | : | No. 1:05-cv-171 |
| | : | *Lee* |
| PAULA T. THOMPSON, Clerk of | : | |
| Court of General Sessions for | : | |
| HAMILTON COUNTY, TENNESSEE, | : | |
| | : | |
| *Defendant*. | : | |

**MEMORANDUM**

**I. Introduction**

Before the court is the motion of defendant, Paula T. Thompson in her official capacity as the General Sessions Court Clerk for Hamilton County, Tennessee ("Thompson"), for a summary judgment pursuant to Fed. R. Civ. P. 56, or, in the alternative, to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 26]. The *pro se* plaintiffs, Maston and Linda Lyons ("the Lyons") have filed a response in opposition to Thompson's motion for summary judgment or to dismiss [Doc. No. 29]. Consequently, Thompson's motion is now ripe for review. In addition, on February 15, 2006, the Lyons filed an untimely motion for a judgment pursuant to Fed. R. Civ. P. 56 and Fed. R. Civ. P. 12(c) [Doc. No. 31], with supporting memorandum [Doc. No. 32].

For the reasons which follow, Thompson's motion for a summary judgment [Doc. No. 26] will be **GRANTED,** the Lyons' untimely motion for a summary judgment [Doc. No. 31] will be **DENIED**, and the Lyons' claims will be **DISMISSED WITH PREJUDICE**.

## II. Background

The Lyons filed their original complaint *pro se* on June 24, 2005 [Doc. No. 1] and they filed an amended complaint on December 21, 2005 [Doc. No. 19]. The Lyons' amended complaint states in pertinent part that they "bring this action based on due process violations under the Fifth and Fourteenth Amendments to the Constitution of the United States of America" [Doc. No. 19 at 1]. The factual averments in the Lyons' amended complaint state:

> On June 6, 2005, the Plaintiffs appeared in General Sessions Court in reference to a dispute with their landlord, Wanda Carver. At the end of the hearing, Judge O. Michael Carter gave both sides the right of appeal. The plaintiffs went to file their appeal on June 17, 2005. The deputy clerk of General Sessions Court refused to accept the plaintiffs' application for appeal, or their bond stating the time for appeal was over. The deputy even went so far as to tell the other young clerk in the office not to give the plaintiffs an application when she started to get a form to give to them. The deputy clerk once again counted the ten days on her calendar and said the plaintiffs could not appeal. The young clerk quickly handed the plaintiffs a blank form and fled from the front desk.
>
> That same day the plaintiff, Linda Lyons, called Clerk Paula Thompson and left a recorded complaint about the situation. There has not been a word from the office since.

[*id.* at 1-2]. The Lyons' amended complaint further states that they "were excluded from the judicial process because a deputy court clerk refused to take their application for appeal and their bond" and they assert the "courthouse door was slammed in their faces" [*id.* at 3]. The Lyons' amended complaint seeks "actual damages of $150,813.25 and punitive damages of $1,357,319.25." [*Id.* at 4].

## III. Thompson's Motion

As noted, Thompson seeks a summary judgment and/or dismissal of the Lyons' claims [Doc. No. 27-1 at 1]. In the memorandum in support of her motion, Thompson asserts that, although the Lyons' amended complaint does not refer to a federal cause of action other than the Fifth and Fourteenth Amendments to the United States Constitution, the allegations against Thompson in the

-2-

Lyons' complaint are brought pursuant to 42 U.S.C. § 1983 [*id.* at 3]. Thompson also asserts she has not been sued in her individual capacity in the amended complaint; rather, she has been named as a defendant only in "her official capacity as the duly elected General Sessions Court Clerk for Hamilton County, Tennessee." [*Id.* at 1]. Thompson asserts by bringing their action against her in her official capacity, the Lyons are actually seeking monetary damages from a governmental entity, Hamilton County, Tennessee [*id.* at 3-4]. Thompson further asserts the Lyons have not set out a basis for § 1983 liability against Hamilton County, Tennessee, because they have neither alleged the existence of any formal policy or custom concerning the allegations which form the basis of their amended complaint nor alleged the existence of any informal policies or practices of denying litigants in the General Sessions Court the opportunity to appeal their cases [*id.* at 4].

In response to Thompson's motion, the Lyons acknowledge they filed this action against "Thompson in her capacity as a government official of Hamilton, County, Tennessee." [Doc. No. 30-1 at 1]. The Lyons further state the undisputed facts of this matter are:

> The basis of this complaint is that the Plaintiffs went to the General Sessions Court Clerk's Office on June 17, 2005, to appeal a lawsuit heard by the Honorable Judge O. Michael Carter. There were two clerks in the office, a blond woman standing near the front desk, and a black woman standing across the office next to the window. The blond woman approached the Plaintiffs and began to assist them. The Plaintiffs told their names and that they had come to file a notice of appeal and pay the appeal bond. She took a pad from under the desk and began to tear a form off. The black woman quickly crossed the room and told the blond woman that she would take care of the Plaintiffs. There was a stare-down and a disagreement between the two as to who would wait on the Plaintiffs. The blond woman stepped back, but did not leave. The black woman told the Plaintiffs that they could not appeal; their ten days were up. The Plaintiffs asked for the form again to file and was told "no" emphatically. The blond woman once again began to tear the form off the pad and was told by the black woman "no" don't give that to them! She quickly handed the form to the Plaintiffs and fled to the back of the office. It is true the Plaintiffs did not return that afternoon to challenge the clerk's denial, but they did call County

-3-

Clerk Paula Thompson's voice mail and left a recorded complaint of the incident for her. Defendant Thompson never returned the call.

[*Id.* at 1-2].

Attached as Exhibit A to Thompson's motion and as Exhibit A to the Lyons' response to Thompson's motion, are portions of what appears to be the deposition of Linda Lyons, which contains several interjections by Maston Lyons. These portions of the deposition state in pertinent part:

> When we went in, I had the bond money in my hand. I asked for a bond application, and this young blond-headed gal had come to the front – there were two people in the office – had come to the front, and she started to tear it off the – she pulled the pad out from under the desk and started to tear it off.
>
> And this black lady came up, and she looked at her and she says I'll take care of it. And the girl says, well, I can take care of it. She says, no, I'll take care of it. And the blond-headed girl stood there a minute. And we told, told the black lady what we wanted and that I needed a copy of the form for bond, appeal, for appeal bond. And she said, well, when was the case heard? And I told her, and she said your ten days are up.
>
> . . .
>
> And I, I told her, I said, you know, we're here; we want to file an appeal. And she counted on her calendar again. Your ten days are up. And the girl, blond-headed girl, was standing there . . . and she started to tear off the appeal form and hand it to me, and the black girl said no, don't give it to her.
>
> And, and the blond-headed gal looked at her kind of funny and kind of shook her head and . . .

[Doc. No. 27-2, Tr. at 71]. The deposition further states:

> Q     Okay. Now, when, when you went in . . .
>
> Q     - - you did not have a prepared motion –
>
> A     Huh-uh.
>
> Q     - - or notice of appeal?

-4-

A   Huh-uh.

Q   Okay.  And you asked to appeal your case?

A   Uh-huh.

Q   And the discussion was had, the offshoot of which the black lady said you can't appeal?

A   Uh-huh.

Q   All right.  And then the blond-headed lady gave you an appeal bond?

MR. LYONS:  That's right.

A   A paper, yeah.

. . .

Q   - - they give you; they had that - -

A   Yeah, that form.

Q    - - form where they tear it off –

A   Uh-huh.

Q    – and give it to you?

A   Yeah.

Q   And she gave it to you and you left?

A   Uh-huh.

Q   Did you ever come back that day and refile, take your completed - -

A   No.

Q   - - appeal bond back?

A.   No....

[*Id.*, Tr. at 81-82]. The deposition testimony continues:

> Q Did anybody over there tell you not to come back and file that?
>
> A No.
>
> MR. LYONS: No.
>
> Q All right. So I assume then you were, you were free to have prepared that, fill it out and come back to the clerk's office and file it?
>
> A I was, I was hoping to hear from Paula Thompson because - -
>
> Q Okay.
>
> A - - that was why I called her. And I felt like it was her job to tell me that it was okay to come back because the black lady let me know quite clearly under any certain terms that no, I could not file that appeal.

[*Id.*, Tr. at 85-86].

### A. **Standard of Review**

As noted, Thompson has moved for a summary judgment under Fed. R. Civ. P. 56, or, in the alternative, to dismiss under Fed. R. Civ. P. 12(b)(6). Because matters outside of the pleadings; namely, portions of a deposition, have been presented, and not excluded by this court, Thompson's motion must be treated as a summary judgment and disposed of pursuant to Fed. R. Civ. P. 56. *Pierzynowski v. Police Dept. City of Detroit*, 941 F. Supp. 633, 639 (E.D. Mich. 1996) (citing *Scott v. Central States, Southeast & Southwest Areas Pension Plan*, 727 F. Supp. 1095, 1095 (E.D. Mich. 1989)).

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for

-6-

Case 1:05-cv-00171  Document 33  Filed 02/24/06  Page 6 of 16  PageID #: 6

summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

B. <u>Analysis</u>

Although the Lyons do not explicitly refer to 42 U.S.C. § 1983 in their *pro se* amended complaint, their response to Thompson's motion makes it clear they seek compensatory and punitive damages against Paula T. Thompson only in her official capacity as the Clerk of the Court of General Sessions for Hamilton County, Tennessee under § 1983 [Doc. No. 29 at 3]. The Lyons' amended complaint asserts claims against Thompson solely in her official capacity, and it does not assert claims against Thompson in her individual capacity.

In *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989), the Sixth Circuit interpreted the decision in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) as requiring plaintiffs seeking damages pursuant to § 1983 to "set forth clearly in their pleading that they are suing the . . . defendants in their

-7-

individual capacity for damages, not simply in their capacity as . . . officials." *See Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) ("There is no reason to expect that one named solely as an official capacity defendant in a § 1983 action should be on notice that he or she may be considered subject to an action for damages in their individual capacity."). Like the complaint at issue in *Brooks*, the Lyons' amended complaint makes no reference to Thompson except in her official capacity. The caption of the amended complaint refers to "Paula T. Thompson, Clerk Court of General Sessions for Hamilton County, Tennessee" and neither in the caption nor in the body of the amended complaint do the Lyons state Thompson is being sued in her individual capacity [Doc. No. 19 at 1]. There is no allegation of any action on the part of Thompson in the body of the amended complaint which would lead her to understand she was being sued in her individual capacity. The only allegation about Thompson in the amended complaint is an allegation "the plaintiff, Linda Lyons, called Clerk Paula Thompson and left a recorded complaint about the situation." [Doc. No. 19 at 2]. This allegation does not refer to any action on the part of Thompson, as it simply avers plaintiff Linda Lyons telephoned Thompson based upon her official capacity as clerk and left a recorded message about the events which transpired in the clerk's office that same day. Moreover, the caption and the factual allegations in the Lyons' original complaint [Doc. No. 1-1] are identical to the caption and factual allegations in their amended complaint.

The deposition transcript referenced above reflects:

> Q . . . You look like you've styled this in her capacity – in her official capacity as sessions court clerk?
>
> A Yes, uh-huh.
>
> Q All right. I didn't see any individual allegations in the complaint against her?
>
> A No.

-8-

> Q Okay.
>
> MR. LYONS: No. She didn't – personally, I've never talked to her.
>
> MRS. LYONS: No.
>
> MR. LYONS: If she walked in that door, I wouldn't know her.

[Doc. No. 30-2; Tr. at 91].

Thus, the Lyons' § 1983 action against Thompson is against Thompson in her official capacity only. *See Wells v. Brown*, 891 F.2d at 592; *Brooks v. Celeste*, 39 F.3d at 129.[1]

In order to establish a cause of action in a § 1983 case a plaintiff must prove: (1) the challenged conduct was committed by a person acting under color of state law; and (2) the conduct caused a deprivation of a right or privilege protected by the laws or constitution of the United States. *Barrett v. Steubenville City Schools*, 388 F.3d 967, 971 (6th Cir. 2004), *cert. denied*, ___ U.S. ___, 126 S. Ct. 334 (6th Cir. 2005); *Summers v. Leis*, 368 F.3d 881, 887-88 (6th Cir. 2004). Under Tennessee law, Thompson, in her capacity as Clerk of the General Sessions Court, is a county employee, not an employee of the State of Tennessee. *Tucker v. Tennessee*, No. 05-1046-T/AN, 2005 WL 1922561, *2 (W.D. Tenn. Aug. 2, 2005); *Spurlock v. Sumner County*, 42 S.W.3d 75, 81 (Tenn. 2001) (citing *Lawler*

---

[1] Although this court is required to liberally construe *pro se* pleadings, this does not require a more lenient application of the substantive law. *Bennett v. Batchik*, No. 90-2036, 1991 WL 110385, *6 (6th Cir. 1991) (citing *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983)). Thus, while this court has liberally reviewed the Lyons' amended complaint to determine if they made any allegations which could be construed as suing Thompson in her individual capacity, this does not excuse the Lyons from the requirement that they must affirmatively make some allegation in their complaint which can be reasonably construed as giving Thompson notice that she is being sued by the Lyons under § 1983 in her individual as well as her official capacity. As noted, no such allegation can be found in the Lyons' amended complaint and since the caption and factual allegations in the Lyons' amended complaint are identical to the caption and factual allegations in their original complaint [Doc. Nos. 1-1, 19], nothing in the original complaint can reasonably be construed as giving Thompson notice that she was being sued under § 1983 in her individual and well as her official capacity.

*v. McCanless*, 417 S.W.2d 548, 553 (Tenn. 1967); *State ex rel. Winstead v. Moody*, 596 S.W.2d 811 (Tenn. 1980)). Hence, the Lyons' suit is construed as a suit against Hamilton County, Tennessee. *Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir. 1999).

Counties and other local governmental entities are "persons" for purposes of § 1983, but a county may only be held liable under § 1983 when "the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local governmental entity." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). A local government cannot be sued for an injury inflicted solely by employees or agents; it is only when the "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [county or local] government as an entity is responsible under § 1983." *Id.* at 773 (citing *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 694 (1978)). The doctrine of *respondeat superior* does not apply to impute liability to a county or local government. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986)). Even a single act or decision, though unprecedented and unrepeated, may qualify as a governmental policy, but it will only be treated as official policy when it is the act "of a body or an official 'responsible for establishing final governmental policy respecting such authority . . . .'" *Id.* (quoting *Pembaur*, 475 U.S. at 483).

A government policy or custom can be established in two ways: (1) a "policy" exists "when a decisionmaker who possesses final authority to establish policy with respect to the action issues an official proclamation, policy or edict" or (2) a course of conduct will be considered a "custom" when "such practices . . . are so permanent and well settled as to virtually constitute law." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3rd Cir. 1990) (citing *Pembaur*, 475 U.S. at 481; *Monell*, 436 U.S. at 690). In either situation, it is incumbent upon the plaintiff to show the decisionmaker is responsible for the policy or, by acquiescence, the custom. *Id.* (citing *Jett v. Dallas Independent School*

*District*, 491 U.S. 701, 735-36 (1989)). The policy requirement is meant to distinguish acts of a governmental entity, for which the governmental entity can be held liable under § 1983, from acts of the employees of the governmental entity, for which the governmental entity is not liable under § 1983. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994). A governmental entity can be held liable under § 1983 only where its policies are "the moving force" behind a constitutional violation. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998).

The Lyons have not pled the existence of a policy or custom of either Hamilton County or the General Sessions Court, which resulted in the alleged constitutional violation. At most, the Lyons have alleged, as confirmed by the deposition testimony, that on June 17, 2005, they went to the clerk's office of the General Sessions Court to obtain an appeal bond form. While one employee in the clerk's office was in the process of giving the Lyons the appeal bond form they had requested, another employee in the clerk's office opined the time in which they could file an appeal had already run. The Lyons admit, and it is undisputed: (1) they were then given the appeal bond form they had requested, and (2) they could have filled out the appeal bond form and returned to the clerk's office at the General Sessions Court that same day to file their appeal, but did not do so. In particular, plaintiff Linda Lyons asserts she did not return to the General Sessions Court and file the appeal, because she was very upset by the employee in the clerk's office stating the time for the Lyons to file an appeal had run. The Lyons admit neither of the two employees present in the clerk's office told them not to return to the clerk's office or that they could not file an appeal.

In addition, the Lyons allege no involvement whatsoever on the part of Thompson in the events which allegedly occurred in the clerk's office on June 17, 2005. At most, the Lyons claim Linda Lyons telephoned Thompson and left a recorded message about the alleged events of June 17, 2005; and, Thompson never returned the call or responded to the recorded message. In response to Thompson's

motion, the Lyons state Thompson "made a deliberate choice not to speak with the Plaintiffs to address the incident." [Doc. No. 30-1 at 4]. They further allege Thompson "supported" the actions of the black woman in the General Sessions clerk's office when Thompson did "not return the Plaintiffs' phone call, thereby acquiescing to the actions of her subordinate." [*Id.* at 6].

Attached to the Lyons' response is copy of a downloaded web page from the web site: www.hamiltontn.gov/Courts/CircuitClerk/default.htm [Doc. No. 30-5]. The web page states in pertinent part:

> The Clerk of the Circuit/Sessions Civil Court is a state mandated constitutional office responsible for the processing and storage of court related papers, providing staff to judges in court, collecting and depositing court related fees, charges and fines, and for collecting and disbursing child support payments as ordered by the Circuit Court Judges. The Circuit Court Clerk also serves as a clerk to the Board of Jury Commissioners.
>
> 1.  To provide the most efficient service possible to the public and to the members of the legal profession at the lowest possible cost.
>
> 2.  To research new technology that would increase the efficiency and decrease the cost of operation.

[*Id.* at 1]. According to the Lyons, "the expressed mission of the Hamilton County Clerk's Office to operate 'at the lowest possible cost' and 'decreasing the cost of operation' ignores the importance of a strong and reliable infrastructure for the judicial system in Hamilton County." [Doc. No. 30 at 5].

The court has considerable doubt as to whether the Lyons have alleged any constitutional violation. This concern is heightened by the deposition testimony that the only thing which prevented them from filing an appeal on June 17, 2005 was the fact they were upset when one of the clerk's office employees opined the time for an appeal had run. Nevertheless, even giving the Lyons the benefit of the doubt and assuming *arguendo* they have alleged a constitutional violation, they have not alleged

-12-

Case 1:05-cv-00171   Document 33   Filed 02/24/06   Page 12 of 16   PageID #: 12

the events of June 17, 2005 occurred as a result of any municipal policy or custom of Hamilton County or the General Sessions Court. Rather, they have asserted they were very upset when an *employee* of the General Sessions Court opined the time for them to file an appeal had run.[2]

Plaintiffs also do not allege or claim any involvement on the part of Thompson in the events which transpired during their visit to in the clerk's office on June 17, 2005. Most importantly, the Lyons have not alleged the events which allegedly transpired in the clerk's office on June 17, 2005 occurred as the result of either a policy or custom of Hamilton County or the General Sessions Court. The *Monell* "policy" or "custom" requirement "was intended to prevent the imposition of . . . liability under circumstances where no wrong could be ascribed to . . . decisionmakers." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). Assuming merely for the sake of argument that the "mission statement" set forth on the Hamilton County webpage; namely, "[t]o provide the most efficient service possible to the public and to the members of the legal profession at the lowest possible cost" [Doc. No. 30 at 5] is county policy, it is simply a general statement of policy. The Lyons have not shown material facts supporting any claim the actions of the employees in the clerk's office on June 17, 2005 occurred or were in furtherance of this policy. Likewise, the Lyons have not shown any nexus or connection between this general statement of policy and the events of June 17, 2005.

---

[2] In her motion, Thompson asserts the time for the Lyons to file their appeal had actually run, but she notes the Lyons dispute this assertion [Doc. No. 26 at 2]. In effect, Thompson invites this court to determine whether the time for the Lyons to file their appeal had actually run. However, in light of the Lyons' admission that they could have returned to the clerk's office on June 17, 2005 to file an appeal, the court does not find it necessary to resolve this issue. In addition, because the court concludes that the Lyons have not pled the necessary elements to hold Thompson liable in her official capacity, the court need not reach this issue and will not render an advisory opinion. *See George Fischer Foundry Systems, Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) (federal courts do not render advisory opinions).

-13-

Case 1:05-cv-00171 Document 33 Filed 02/24/06 Page 13 of 16 PageID #: 13

Further, contrary to the Lyons' assertions, they have presented no facts to show an affirmative action on the part of Thompson which ratified the actions of any of the clerk's office employee on June 17, 2005. The imposition of § 1983 liability "must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Given the nature of the allegations in the amended complaint concerning Thompson, it appears the Lyons are seeking to hold Thompson liable under § 1983 in her capacity as supervisor of the employees in the General Sessions Court clerk's office. A supervisor, however, will not be held liable for failure to supervise, control or train an offending individual unless the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* This requires active unconstitutional behavior rather than "'a mere failure to act.'" *Id.* (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)). The Lyons merely assert they left a recorded telephone message for Thompson and she did not respond to it. However, even assuming as true for purposes of the motion that Thompson did not return a telephone message, the failure to return a telephone call does not come close to showing Thompson encouraged or participated in the events in the clerk's office on June 17, 2005 or to showing an affirmative act on Thompson's part.[3]

---

[3] In response to Thompson's motion, the Lyons state "[w]hen the Plaintiffs had an incorrect public record prior to the June incident, the Plaintiffs would take an original or the final judgment from Circuit Court and show there was a mistake on the public record . . ." [Doc. No. 30-1 at 5]. The Lyons allege the incident at issue, which they characterize as resulting in another unpaid final judgement on the public record, shows a lack of supervision in the General Sessions Clerk's Office. No allegation about a Circuit Court judgment appears in either the Lyons' original or amended complaint. In addition, the comment in the Lyons' memorandum about the other allegedly incorrect public record makes no mention of Thompson, and appears to relate to a judgment issued from Circuit Court not General Sessions Court. More importantly, even assuming *arguendo* there was a mistake in the public record about a Circuit Court judgement, this says nothing about the Lyons' ability to file a timely appeal of a General Sessions decision. It is well-settled conclusory allegations are insufficient to support a § 1983 cause of action. *Williams v. Barksdale*, No. 84-5349, 1985 WL

Accordingly, there is no genuine issue of material fact and Thompson's motion is **GRANTED** as she is entitled to a summary judgment under Fed. R. Civ. P. 56.[4]

## IV.   The Lyons' Motion

On February 15, 2006, the Lyons filed a motion for judgment on the pleadings [Doc. No. 31]. The Lyons state they filed their motion based upon Thompson's "admission that all the facts are true." [Doc. No. 32-1]. Along with their motion, the Lyons have filed a number of exhibits which appear to relate to their claim for damages [Doc. Nos. 32-2, 32-3, 32-4, 32-5, 32-6, and 32-7]. Because matters outside of the pleadings have been submitted with the Lyons' motion for a judgment on the pleadings, it must be treated as a motion for a summary judgment and disposed of pursuant to Fed. R. Civ. P. 56. *Pierzynowski*, 941 F. Supp. 633.

The Lyons' motion is untimely. The original scheduling order established a deadline of December 20, 2005 for the filing of dispositive motions [Doc. No. 10 at 2]. Pursuant to two motions for extension of the dispositive motion deadline filed by Thompson [Doc. Nos. 11 and 21], the dispositive motion deadline was extended to January 25, 2006 [Doc. Nos. 18, 24]. The dispositive motion deadline was not extended beyond January 25, 2006 and the Lyons have not filed a motion to extend the dispositive motion deadline. The scheduling order plainly states that the failure to timely file dispositive motions will be grounds to summarily deny them [Doc. No. 10 at 2, ¶6(b)].

---

12905, * 1 (6th Cir. Jan. 25, 1985) (citing *Place v. Shepherd*, 446 F.2d 1239 (6th Cir. 1971); *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971)). *See also Anthony v. Roberson*, 26 Fed. Appx. 419, 422 (6th Cir. Dec. 11, 2001), *cert. denied*, 537 U.S. 835 (2002) (conclusory allegations of conspiracy do not state an arguable claim that a municipal policy caused defendant's false arrest).

[4] There is not a scintilla of evidence showing when, or if, Thompson actually listened to the telephone message left by Linda Lyons. The evidence shows that neither of the Lyons actually spoke to Thompson.

Because the Lyons' motion was filed after the dispositive motion deadline, the Lyons' motion is subject to summary denial. Addressing the merits of the motion, however, the court finds the Lyons' motion is meritless. As suggested by the Lyons, Thompson did acknowledge "[t]he facts of this matter are not in dispute". [Doc. No. 27-1 at 1]. That the facts are not in dispute, however, does not support the Lyons' motion. As set forth in the discussion of the merits of Thompson's motion for a summary judgment, even taking the facts as alleged in the Lyons' original and amended complaints as true, there is no genuine issue of material fact and as a matter of law Thompson is entitled to a summary judgment. As discussed in detail above, the Lyons have not established a cognizable claim against Thompson in her official capacity as General Sessions Clerk under § 1983. Further, the exhibits attached to the Lyons' memorandum in support of their motion for summary judgement [Doc. Nos. 32-2, 32-3, 32-4, 32-5, 32-6, and 32-7] do not address the merits of the Lyons' official capacity claim against Thompson, but instead were submitted solely to show the Lyons' alleged damages [Doc. No. 32-1 at 5]. The Lyons' untimely filing is not sufficient to alter the analysis of the merits of Thompson's motion for a summary judgment in any way.

Accordingly, the Lyons' motion for a summary judgment under Fed. R. Civ. P. 56 [Doc. No. 31] is **DENIED**.

**V.     Conclusion**

For the reasons stated above: (1) Thompson's motion for a summary judgment pursuant to Fed. R. Civ. P. 56 [Doc. No. 26] will be **GRANTED**; and (2) the Lyons' untimely motion for a summary judgment pursuant to Fed. R. Civ. P. 56 [Doc. No. 31] will be **DENIED**.

A separate order will enter.

                                                   s/*Susan K. Lee*
                                                   SUSAN K. LEE
                                                   UNITED STATES MAGISTRATE JUDGE